The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, counsel. Welcome to the Ninth Circuit. Before we get to our one argued case today, the panel has five submitted matters that we want to officially submit at this point. They are Brenda Campos-Gonzalez v. Bondi, United States v. Villalobos-Galdamez, Acquamuque v. American Airlines, Ballard v. Besignano, and Crete-Barchet v. Providence Health and Services, Oregon. Those cases are now officially submitted, and we will now hear argument in the case of Kolstad v. Baillargeon, I hope I'm pronouncing that correctly. I believe that Mr. Monforton, I'm not sure I'm saying that right, is up first. Very close, Your Honor. It's Matthew Monforton. Very good. Good morning, and may it please the Court, Matthew Monforton for Appellant Todd Kolstad. With the Court's permission, I'd like to reserve five minutes for rebuttal. Keep your eye on the clock, please. We'll try to help you. Thank you, Your Honor. This appeal turns on two independent errors in the District Court's application of collateral estoppel. First, the adjudication of HK as a youth in need of care resulted from a stipulation, not actual litigation. Second, there was no final judgment on the merits issued by the State Court. Under Section 27 of the Restatement of Judgments, an issue is not actually litigated if it is the subject of a stipulation. The transcript for the December 4th Show Cause hearing shows exactly that. The prosecutor requested adjudication, quote, based on the stipulations, close quote. Mr. Kolstad's attorney responded by saying, quote, that's appropriate, close quote. The State Court then adjudicated HK as a youth in need of care, i.e. a neglected child, quote, given the stipulation and lack of objections. There was no testimony, no evidence, no argument. Nothing was actually litigated. Counselor, let's just say, arguendo, that you're correct. Why didn't you appeal that or otherwise object to the findings? With regard to the State Court proceedings? Yes. Your Honor, to be honest, I wouldn't be able to answer that. I was not Mr. Kolstad's counsel in the State proceedings. Mr. Kolstad had been advised by his public defender not to fight the system. He was told- And I respect that. But I guess what I'm saying is, you know, as a good lawyer, we're bound by rules. And if what you say happened, then you should object and say, you know, this is not right. We need to do it this other way because it has this impact. That didn't happen here. And I'm asking, why did that not happen? With regard to the stipulation? With regard to the finding, basically. We're based on the stipulation. Go ahead. I'm sorry, Your Honor. With regard to the findings, those findings were based entirely on the stipulation. And perhaps we would have preferred, if we could have done it over, to have the public defender object. But that didn't happen. The question that this court has to confront is whether there's any preclusion based on that order that was issued by the state court either in December or in February. And because all of the issues in the state court proceedings were stipulated and to, and therefore not actually litigated, collateral estoppel does not apply. No other preclusive doctrine applies. And therefore, Mr. Kolstad ought to be able to proceed on his 1983 claims in this court. Well, what is your best case to that effect? To the effect that? That there's no preclusive effect in light of the way this was handled. Well, we would start with section 27 of the restatement, which states that stipulated. I'm asking for a case. Well, the Ninth Circuit's case, I can't pronounce the first name, but the McDonald case, the one involving the boundaries of the Navajo reservation, that was a situation where the parties had stipulated in a previous proceeding to the use of a map. And because of that stipulation, the Ninth Circuit held that those facts could not be deemed to be actually litigated, and therefore not subject to collateral estoppel. The Montana Supreme Court said essentially the same thing in Lane versus Farmer's Insurance, where they said, in general, issues that are not actually litigated are not subject to collateral estoppel. Now, that case involved a default judgment. However, it didn't necessarily involve stipulation, but section 27 of the restatement holds squarely that stipulated issues are not subject to collateral estoppel. Counsel, I'm looking at page 338 of the record, and well, first, earlier, on 337, the court cites the stipulation, but on 338, the court states that a child should be designated as a youth in need of care by reason of the following facts presented at the hearing and in the record. So what's the court referring to there? Is that only referring to the stipulation? It doesn't read that way. Your Honor, what we believe is that all we have, as far as what we know of the December 4th show cause hearing, is the transcript. And as the transcript shows, there was no evidence presented whatsoever, and no other indication of any evidence presented at any time during the state court proceedings. What it appears to be is that when the state court on December 19th memorialized its order that it issued orally on December 4th, it probably resorted to boilerplate. The importance here is that the collateral estoppel requires adversarial testing and not mere repetition of stipulated material. The December 4th transcript shows a stipulation and no evidence was offered. The additional statements of the state court inserted into its written order on December 19th were drawn from the Bellagio affidavit, but that affidavit was never offered into evidence. None of its facts were contested or argued, and therefore they were not actually litigated and not subject to collateral estoppel. It might be helpful, I suppose, if you could just take a step back and if you could tell me why it would even be appropriate for us at this stage to take judicial notice of the December 4th transcript. It's not in the record yet. We haven't voted yet whether to grant that motion. It seems to me that you're not only asking us to take judicial notice of the fact of the hearing, but also of the contents of that hearing and making findings, appellate findings now based upon that. So, I mean, why would that even be appropriate at this stage? Well, Your Honor, two reasons. First, the court can take judicial notice of the transcript. And second, the court should take judicial notice of the transcript. Rule 201D of the Federal Rules of Evidence allows this court to take judicial notice of the transcript at any stage of proceedings. And in fact, this court in Renz-Pastabella v. Visa did exactly that. They took judicial notice of a transcript to determine what issues in a prior proceeding had been actually litigated. Not only is the court able to, the court should because fairness requires it. Mr. Kolstad, the defendants, and the district court were all on the same page about the state court proceedings being decided by a stipulation. Now, on appeal, the defendants have completely reversed themselves and are denying that the stipulation even existed. This court is entitled to rely on an accurate record of what actually happened in the state court proceedings, and more precisely, what was actually litigated in the state court proceedings, and what was not actually litigated. Hypothetically, if hypothetically we disagreed with you, can you still prevail in this case, or do you need that, do you need us, do you need that December 4th transcript? The December 4th transcript is obviously very helpful, and it provides this court with an accurate version of what actually happened. However, we don't, there is a second path to victory for us, and that is the record itself and the remarks or the positions taken by the defendants in the district court. They repeatedly told the district court that all of the facts were stipulated to, and more importantly, the district court at ER 15 agreed that all of those facts were stipulated to. So, because of that, the defendants are judicially stopped from denying either the existence of the stipulation or the scope of the stipulation. Those representations or those arguments by the defense were made at ER 178 through 182, and again, the district court at ER 15 accepted all of those arguments. Defendants are now judicially stopped, so even without the transcript, your honor, this court has more than enough just looking at the district court's record to find judicial estoppel, and to note that the defendants are simply not able at this time to go back to a completely contrary position. And I would also add, not only, I notice I'm running low on time here, so I want to quickly go to my next point, if I may. Collateral estoppel was also inapplicable because there was no final judgment issued by the state court. The prosecution filed a neglect petition, then requested its dismissal. The state court agreed. Under Rule 4182, that's a voluntary dismissal as a matter of law. The order was silent as to prejudice, and so by rule, it's without prejudice and therefore lacks preclusive effect. Moreover, the state could have refiled his petition at any time, and it almost certainly would have if, for example, H.K.'s biological mother had later been unwilling or unable to continue caring for H.K. So the state court's dismissal order was not a final judgment, either in form or in substance, and did not trigger collateral estoppel. Unless the panel has any further questions. Yeah, I'm going to say you're below your five minutes. You want to save the balance of your time for rebuttal? Yes, please. Thank you, your honor. Very well. All right. So, Mr. Hayhurst, please. Thank you, your honor. May it please the court. My name is Matt Hayhurst, and I represent the defendants and appellees in this case. They are the state social workers who are with Montana Child and Family Services, and they were the ones who ensured that appropriate medical care was provided to a 14-year-old youth who was acutely suicidal. And the good news, and it's always nice to have good news, is that the youth is doing well, safe and sound now. So I'm happy to report that. The rub is that we are back here in court with the filing of this federal lawsuit. And I say back in court, of course, because these issues were already decided at the state court level. There's no dispute about that. The only dispute is whether the issues were actually litigated to a final judgment. And here, I would call the court. Let me ask you, counsel, I'm sorry for interrupting you. Let me ask you this. Do we really need to get into the weeds of the effect of the stipulation and how much was or was not litigated in reviewing the transcript? Because the issue is really whether there was a full and fair opportunity to litigate and the voluntary stipulation and the fact that there were no objections. I don't see anything in the record that shows there wasn't a full and fair opportunity to litigate. I would completely agree, Your Honor. This case is a lot like what I consider to be one of the more on point cases for the court, which is in Ray Gottheiner. That's the Ninth Circuit case dealing with the bankruptcy issue. And there you had an unopposed summary judgment motion. Even though the person had counsel, they had an opportunity to oppose it. The summary judgment motion was unopposed. And then there was a ruling. And the question was, should that ruling be given collateral estoppel effect? And the answer was yes, under the circumstances there, because there had been a ruling on the merits. And the court specifically said, and I'm quoting here, that after many months of discovery, Gottheiner decided his case was no longer worth the effort, does not alter the fact that he had his day in court. And so we would agree, Your Honor, this is a situation where every opportunity was presented for Mr. Kolstad to challenge these findings. He elected not to, even though he filed a couple of petitions for writs with the Montana Supreme Court, he never appealed the order. It was never subject to appeal. And from our perspective, the three key documents in the record are, number one, the 14-page affidavit from Cindy Balargian, the social worker. That's on page 273, which includes the hospital discharge record. Secondly, the state court orders. Multiple orders making specific findings based on the evidence. These are not boilerplate orders. These are orders where the district judge went through the points and specifically found evidence to support her decision-making there. And then the third key document would be the fact that the record shows throughout that Mr. Kolstad had a full and fair opportunity. He had counsel appointed from the beginning, and there was simply no appeal made. So from our perspective, Your Honor, the two-part test to determine whether there's a final judgment on the merits is met. And that is whether the issue was effectively raised and whether the losing party had an opportunity to contest it. I would also highlight the fact that the affidavit from Ms. Balargian went through not only the specific medical issues and her own personal observations that she had seen in investigating this. She relayed all of that information. She also relayed the fact that the father and the stepmother were declining to allow the transfer for the psychiatric care. And she explained the reason as well. That is on page 281 and 282 of the record. She said to the court that there was a concern about some type of gender-affirming care being provided. That was in the record. And then the court later found on page 190 of the record that those concerns were, quote, invalid and unsupported. So that document's critical. And then I would refer the court to the first order from August of 2023. That's page 325 of the record. And I mention this because in that document, in the very first sentence, the court references that she has read the petition and the affidavit. And then she goes on to make specific findings on the next page, 326, in four paragraphs, each time specifically referring to the affidavit. And finally, Your Honor, we go to the December 2023 record, which has already been mentioned by the court today. And in that document, page 336 really sums it all up, in my opinion. It says the court has considered all the evidence. It's provided an opportunity for the parent to provide testimony on their own behalf and cross-examine witnesses. And now makes the following findings of fact based on the preponderance of the evidence presented at the hearing and in the record. And then goes on as before and makes detailed findings. That is exactly a situation why there should be collateral estoppel applied. And in fact, that is why in our rationale, the decision should be affirmed for the district court, which was made by District Judge Susan Waters, who incidentally has 35 years of experience as a practicing lawyer, state court judge, and federal judge. Somebody who knows their way around Montana law on collateral estoppel and otherwise. The other point that I'd mentioned in the Gottheiner case is that when the court determined that it was going to apply collateral estoppel there, it referenced the discretion of the lower court. And that's in the court opinion there in Gottheiner. And it says that under the circumstances, we hold that the lower court did not abuse its discretion in giving collateral estoppel effect and agree upon de novo review that collateral estoppel was properly available. And so again, you see a situation just like we have here where there was an opportunity for the other party to contest the issue. They did not contest it and they were bound. And the fact that they decided at the last minute to change their position does not change the full and fair opportunity to be heard. As a second case, and I do think it's important, is the case called Weaver versus Checker. This is a district court case, so it's obviously not binding on this court. But this is from the Northern District of California in 2022. And I mentioned the case because it closely parallels what happened in Gottheiner. You had a motion to compel arbitration that was not opposed by the plaintiff. And the issue was whether that order should be given preclusive effect. And there's a couple things that were important there. The court, the district court said, I'm going to look to the restatement and I'm going to apply collateral estoppel. And quoted section 27, comment D of the restatement, which says, quote, when an issue is properly raised by the pleadings or otherwise and is submitted for determination and is determined, the issue is actually litigated. And indeed, that's exactly what happened here. The second question about the kind of the Rule 41 issue, I'm happy to touch on that briefly. And I think the district court's analysis here was spot on. On page 14, she summarized the analysis in three sentences, and I think she got it right. She referenced the fact that the motion to dismiss the case never referenced Rule 41. It's nowhere in there. Instead, what it's referencing is Montana's specific statutory framework for this type of situation under section 41, 3, 4, 38, sub 3D. And that subsection specifically says that the court may enter its judgment, may order placement with the noncustodial parent and dismiss the proceeding. And so it's a situation where we have a specific state statute in this sort of unique area providing the mechanism for this relief that's provided. It's not inconsistent with Rule 41 because Rule 41B contemplates that a dismissal not under this rule is an adjudication on the merits. And that's precisely what happened here. And of course, the case of NRASS really brings this to bear and explains whether this is an appealable order under Montana law. Well, in Montana, you can't appeal an issue unless it's a final order, absent some exceptions that don't apply here. And so the court found that it indeed was an appealable order. So that's a helpful case for the court to look at. Unless there are other questions, I'm happy to wrap up early and save a little bit of time for the court. God bless you. Any questions by my colleagues? I'm good, thank you. All right. Thank you very much. Mr. Montforton, you have some rebuttal time. Thank you, Your Honor. Let me begin by picking up on a point that Judge Wynn raised a moment ago with regard to the full and fair hearing requirement of collateral estoppel. It's important to keep in mind, as this court held in Janjua versus Neufeld, that the full and fair opportunity requirement and the actually litigated requirement are two separate requirements for collateral estoppel. Both have to be met and both are separate. We concede that there was a full and fair hearing in this matter. We do not concede that anything was actually litigated in the state court proceedings. And that's why collateral estoppel, that's one of the reasons why collateral estoppel was improperly applied by the district court. With regard to the Gottheimer case that was cited by my opponent a few moments ago, Gottheimer is a very different case. The prior case in Gottheimer involved what this court referred to as extensive discovery that went on for 16 months, followed by a motion for summary judgment that was ultimately granted. By contrast, there was no active participation by Mr. Kolstad in the state court proceedings. And that's shown in ER 193 and 194. That's where the state court gives a procedural history of the proceedings in the state court. On August 25th, there was an emergency ex parte order, followed by an emergency placement hearing a week later, two brief continuances by Mr. Kolstad, and then a single show cause hearing in December consisting entirely of a stipulation. Unlike Gottheimer, this case culminated in a stipulation with no issues actually litigated. Unlike the litigant in Gottheimer, Mr. Kolstad didn't actively participate in litigation. And indeed, he sought to avoid litigation as his public defender suggested that he do. With regard to the Rule 41A2 issue, counsel mentioned a moment ago that there was no citation of that rule by the court or by the parties. But we've cited cases with regard to federal rule of civil procedure 41A2, holding that there doesn't have to be an explicit citation to that rule in order for that rule to apply. The question is, has the plaintiff requested dismissal of its own petition or complaint? And was that granted by the court? And that's exactly what happened here. They have no good answer as to why 41A2 doesn't apply. And because there was no prejudice shown on the record, or because there was no mention of prejudice in the dismissal order, it's a dismissal without prejudice. And therefore, it has no finality for purposes of collateral estoppel. I think the difficulty with your argument, counsel, is that there was an adjudication in this case and specific factual findings based on the court's review of the evidence. I think if we're talking about a default judgment or a mere stipulation introduced into the record alone, that would be different. So you've got a tough record here. Well, Your Honor, we respectfully disagree. The record is the transcript. And the transcript shows that the prosecutor said up front, we would like to proceed by stipulation. And that was agreed to by Mr. Kohlstadt's public defender. And the state court agreed as well. There's simply no... The transcript trumps the written order that the state court issued two weeks later. There was no evidence ever accepted by the state court or ever reviewed by the state court. Moreover, the defendants repeatedly referred to these facts as stipulated facts. They told that to the district court. The district court agreed. They're judicially stopped from changing their story at this point. I noticed my time is rapidly running out. I'd like to conclude by stating that the state court proceedings here were decided not with evidence, testimony or argument, but with a public defender telling a frightened father not to fight the system. No actual litigation occurred and no final judgment on the merits were ever issued. The district court's ruling was an error and it must be reversed. Lest the members of the panel have any further questions for me, I will submit at this time. Very well. Any other questions, my colleagues? Thank you. I think not. The case of Kolstadt v. Bailarigán is submitted. We thank counsel. The court stands adjourned for the day. Court is adjourned. Thank you.
judges: SMITH, NGUYEN, THOMAS